IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LEGGETT & PLATT, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 03-5143-CV-W-REL |
| | ) | |
| WAYNE AARON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is plaintiffs Leggett and Platt de Mexico, S.A. de C.V. and Land P Mexico, S.A. de C.V.'s (hereinafter referred to jointly as "Leggett Mexico") motion to compel arbitration as against defendants Wayne Aaron and Lance Aaron. Defendant Wayne Aaron filed a response to this motion, to which plaintiffs replied. After a stay of this case for two weeks to give the parties the opportunity to attempt settlement negotiations, defense counsel orally moved for leave to file a sur-reply. Without objection from the plaintiff, this motion was granted. Wayne Aaron then filed a brief which was styled as a sur-reply, but which raised new issues not previously argued and sought reconsideration of issues already decided by this court. Defendant Lance Aaron attempted to join in this sur-reply, by way of objecting to Leggett Mexico's original motion to compel.

Plaintiffs responded to defendants' sur-reply, requesting that the court give no consideration to defendants' arguments in light of the impropriety of Lance Aaron's untimely attempt to object to arbitration. Plaintiffs also state that the new arguments made in defendants' brief abuse the intended role of a sur-reply. I acknowledge the correctness of plaintiffs' arguments. For the sake of clarity, fairness, and cohesiveness in the rule of the case, however, I will consider each of defendants' arguments in turn.

In his initial response to plaintiffs' motion to compel arbitration, defendant Wayne Aaron argued that the doctrine of indispensable parties prohibits any order compelling arbitration in this case, as not all of the former shareholders of MZM Mexico are joined in this lawsuit or subject to the jurisdiction of this court. Defendant stated that Lance Aaron cannot receive service for non-parties to this lawsuit, and that neither Wayne Aaron or Lance Aaron have been sued in their individual capacities. Defendant argued that plaintiff Leggett & Platt, Inc. (a United States corporation) lacks standing to request arbitration, as it was not a party to the Share Purchase and Sale Agreement (SPSA)—the Mexican contract containing the arbitration clause.[1] Finally, defendant requested reconsideration of this court's finding of personal jurisdiction as to both Wayne and Lance Aaron.

In the sur-reply, defendants submit a rapid-fire series of arguments for denial of plaintiff's motion to compel arbitration. Defendants challenge venue in this court and argue for a discretionary change of venue for *forum non conveniens*. Defendants argue that plaintiffs have failed to comply with procedures of the American Arbitration Association, as required by the contract. They allege that there has been no refusal to arbitrate under the Federal Arbitration Act. They implicitly request reconsideration of the argument made in their second motion to dismiss that plaintiffs have waived arbitration by filing the instant lawsuit. Finally, defendants raise the wholly new issue that the arbitration provision is void because plaintiffs fraudulently induced the defendants to enter into the SPSA.

---

[1] This argument apparently arises from defendants' mistaken reading of plaintiffs' motion. The motion is filed on behalf of Leggett & Platt de Mexico and L and P Mexico, both Mexican corporations who are parties to the SPSA. Leggett & Platt, Inc. did not join in this motion and does not seek to arbitrate its claims under the amended complaint.

*I. DISCUSSION*

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") establishes a duty among signatory nations to enforce contractual agreements to arbitrate disputes in the context of international commercial transactions. In 1970, upon entry into force of the Convention, Congress implemented the terms of the Convention within the Federal Arbitration Act. 9 U.S.C. §§ 201-208. The Act creates original subject matter jurisdiction in federal district courts over actions and proceedings falling under the Convention. 9 U.S.C. § 203. Venue over such proceedings lies in "any [district] court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." 9 U.S.C. § 204.

A court considering a motion to compel arbitration under the Convention should engage in a two-part limited inquiry. *See Riley v. Kingsley Underwriting Agencies*, 969 F.3d 953, 959 (10th Cir. 1992); *Northwest Airlines, Inc. v. R&S Co., S.A.*, 176 F. Supp. 2d 935, 942 (D. Minn. 2001). In the first step of this inquiry, the court should ask the following questions:

1) Is there an agreement in writing to arbitrate the subject of the dispute?

2) Does the agreement provide for arbitration in the territory of a signatory of the Convention?

3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered commercial?

4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

*Riley*, 969 F.2d at 959. If the answer to all four questions is "yes," the court is required to order

arbitration unless it finds, in the second part of the inquiry, that the agreement is "null and void, inoperative or incapable of being performed." Convention, art. II(3).

Defendants[2] do not dispute that the four elements of the first part of the inquiry are satisfied. As this court has held in previous orders, there is an unequivocal and broad agreement to arbitrate all disputes arising out of the SPSA. That agreement, contained in section 12.16 of the SPSA, states as follows:

> [A]ny dispute, controversy, or claim arising out of or in relation to or in connection with this Agreement or the transactions carried out under this Agreement, including without limitation any dispute as to the construction, validity, interpretation or enforceability or breach of this Agreement, shall be exclusively and finally settled by arbitration. ... The arbitration proceedings shall be held in Mexico City, and shall be conducted in both the English and Spanish languages. ... The arbitration and all proceedings relating thereto shall be held pursuant to the international arbitration rules of the American Arbitration Association.[3]

That arbitration is to take place in Mexico, which is a signatory to the Convention. The agreement memorialized by the SPSA involves the sale and purchase of stock in a Mexican corporation, and so is commercial in nature. Finally, the plaintiffs are Mexican corporations and parties to the SPSA as purchasers of the stock.

---

[2] Plaintiffs point out that defendant Lance Aaron did not file a response to plaintiffs' motion to compel arbitration and has attempted a belated endorsement of Wayne Aaron's opposition by joining in the sur-reply. Defendants have offered no explanation for Lance Aaron's failure to respond to the motion or his sudden change of heart. It would be within this court's sound discretion to reject as waived all arguments made on behalf of Lance Aaron in defendants' sur-reply. The discussion of those arguments and the findings of law reflected in this order are intended only to enhance the clarity and cohesiveness of this court's ultimate ruling. I do not find that Lance Aaron is entitled to his untimely entry into this fray. Finding that Lance Aaron has waived any objection and ordering him to arbitrate plaintiffs' claims would effectively require Wayne Aaron to participate in that arbitration for the sake of protecting his own interests. Therefore, full consideration of the rights of Wayne Aaron require this court, in all fairness, to weigh the issues raised on Lance Aaron's behalf as well.

[3] Other than this arbitration clause, the SPSA contains no forum selection clause or choice of law provision.

Defendants take issue, instead, with the authority of this court to compel arbitration against them. They also claim that the second part of the inquiry under the Convention is not met, raising the issue of fraud in the inducement. Defendants generally argue five bases for denial of plaintiffs' motion to compel arbitration: (1) absence of necessary and indispensable parties; (2) lack of personal jurisdiction; (3) improper venue; (4) failure to fulfill statutory and contractual requirements for arbitration; and (5) nullity of the SPSA due to fraud in the inducement.

*A. Necessary and Indispensable Parties*

Rule 19 of the Federal Rules of Civil Procedure provides that parties meeting certain requirements may be joined in a lawsuit if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in lawsuit and disposition of the action in the person's absence may (i) impair or impede the person's ability to protect that interest, or (ii) subject the parties to a substantial risk of incurring multiple or inconsistent obligations. Fed. R. Civ. Pro. 19(a). If the person cannot be made a party, the court should determine whether the absent person is indispensable. Fed. R. Civ. Pro. 19(b). Factors to consider in such a determination include (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties, (2) the extent to which the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. Pro. 19(b).

Defendant Wayne Aaron argues that Leggett Mexico seeks to have this court order "numerous alien, non-party signatories to the SPSA, who have never been to Missouri or had any relationship to Missouri, to arbitrate a case in Mexico." Defendant cites case law to support his argument that this court "may not properly issue a legal determination which affects the interests

of ... non-party Mexican citizens in these circumstances." He submits as evidence a document purported to be a revocation by former shareholders of MZM Mexico of Lance Aaron's representation pursuant to § 12.13 of the SPSA. The revocation is incomplete, unsigned, and unauthenticated, however. It is evidence only of its own existence, not of any intent by the former shareholders to revoke their contractual agency relationship with Lance Aaron.

The cases defendant cites are inapposite to the motion at bar. In *United States v. Creative Games Technology, Inc.*, the Eighth Circuit held that a lawsuit claiming that a contract was invalid could not be allowed to proceed in the absence of all the parties to the contract. 27 F.3d 572 (8th Cir. 1994) (per curiam) (unpublished opinion). In a related case, the Seventh Circuit reached a similar conclusion, holding as well that the United States, as trustee, could not adequately represent the interests of the absent parties. *United States v. Tribal Development Corp.*, 100 F.3d 476, 479 (7th Cir. 1996). Both *Creative Games* and *Tribal Development* concerned contracts related to Indian gaming operations. In those cases, the plaintiffs sought declaratory judgment that the contracts were invalid for failure to comply with the Indian Gaming Regulatory Act, and other statutes. *Tribal Development*, 100 F.3d at 477; *Creative Games*, 27 F.3d at 572. The cases originated as *qui tam* actions by private citizens against merchants who supplied Indian tribes with goods and services for gaming operations, and the United States entered the lawsuit on the relation of those citizens. *Tribal Development*, 100 F.3d at 477. The tribes, which were in Minnesota and Wisconsin, were not joined in the lawsuits, either as plaintiffs or defendants, and they were not subject to involuntary joinder because of their entitlement to sovereign immunity. *Creative Games*, 27 F.3d at 572. The courts held that the tribes were indispensable parties under Rule 19, and dismissed both cases.

Unlike the above contract disputes, the instant case does not seek a declaration that the SPSA, or any other contract, is invalid. The *Tribal Development* and *Creative Games* plaintiffs were

a government entity and private citizens with no direct interest in the challenged contracts. The issue was essentially one of enforcing the Indian Gaming Regulatory Act, and allowing those cases to proceed in the absence of those accused of violating the law would be unconscionable. In the instant case, by contrast, two of the parties to the SPSA are seeking to enforce that contract against two other parties. Specifically, the plaintiffs seek to call upon the authority of this court to overcome defendants' efforts to resist and avoid arbitration.

Defendant also cites a Second Circuit case for the proposition that non-parties to a lawsuit cannot be ordered to arbitrate a dispute based on their close association with the party defendants. The case cited is *Doctor's Associates, Inc. v. Reinert & Dupree, P.C.*, 191 F.3d 297 (2d Cir. 1999). *Doctor's Associates*, however, did not concern an order compelling arbitration of claims. Rather, the Second Circuit reversed the district court's order enjoining 57 non-party franchisees from litigating claims against Doctor's Associates, the franchisor, in state court. *Id.* at 302-06. The district court's order also prohibited all franchisees represented by the defendant law firm from commencing or prosecuting litigation against Doctor's Associates that related to a franchise agreement. *Id.* at 306. The background of the case revealed that plaintiff DAI had sought and won a number of orders against the franchisees compelling arbitration pursuant to the franchise agreement. *Id.* at 300-302. Those orders arose out of lawsuits filed in federal court against the franchisees individually and in groups. *Id.* The Second Circuit had, on nine previous occasions, affirmed such orders compelling arbitration, including in one action against an uncertified class of franchisees. *Id.* at 300. That uncertified class included 31 franchisees who were residents of states other than Florida, and 3 franchisees who were residents of Florida. *Id.* Plaintiff DAI did not name the Florida residents in its federal action, presumably because doing so would destroy diversity. *Id.* Nonetheless, the district court's order compelling arbitration bound the 3 Florida franchisees, as well as unnamed, non-party

members of the class. *Id.* The Second Circuit summarily affirmed. *Id.* On the tenth appeal to the Second Circuit, the district court and the plaintiff had made a last-ditch effort to shut down the state court litigation under the franchise agreements. Rather than compelling arbitration against the franchisees themselves, the franchisor used the avenue of the attorney-client relationship with Reinert & Dupree and attempted to deprive the franchisees of legal representation in their litigation efforts. *Id.* at 300, 302, 306. The Second Circuit rejected this novel approach to enforcing the arbitration agreements, notwithstanding the defendant's close relationship with the franchisees.

Even if *Doctor's Associates* supported defendant's contention that non-parties to litigation cannot be compelled to arbitrate, such a rule of law has no application in the instant case. Leggett Mexico is not requesting that this court order the non-party signatories to the SPSA to arbitrate its disputes under that contract. Leggett Mexico seeks only to compel arbitration against Wayne Aaron and Lance Aaron, both of whom are parties to the SPSA and named defendants in the instant action. Any concern that the other former shareholders are necessary parties to the arbitration can be addressed by the arbiter. Moreover, in ordering the defendants to arbitration, this court can direct the plaintiffs to extend the demand for arbitration to all signatories and other interested parties to the SPSA, regardless of whether they are joined in this lawsuit. The absent signatories do not have any interests at stake in the motion at bar that have not been addressed in plaintiffs' proof of their entitlement to arbitration and defendants' opposition to that motion. The absent signatories therefore are not necessary parties under Fed. R. Civ. Pro. 19(a), and by extension cannot be indispensable parties under Rule 19(b).

### B. Personal Jurisdiction

Over the course of this litigation, I have ruled twice on the issue of this court's personal jurisdiction over defendants Wayne Aaron and Lance Aaron. *See* Doc. No. 63, *Order Granting in*

*Part Defendants' Motion to Dismiss* at 7-10; Doc. No. 82, *Order Denying Defendants' Motion to Dismiss* at 4-5. Defendants request reconsideration of the most recent finding of personal jurisdiction, arguing that the court did not consider whether the exercise of personal jurisdiction would offend the Supreme Court's "reasonableness" standard. Because personal jurisdiction is a key point of contention in this case, I shall consider the issue anew to ensure that all points of law have been addressed.

The issue of personal jurisdiction arose in this case in the context of defendants' motions to dismiss plaintiffs' original complaint, which asserted claims under both the SPSA and a related but separate contract known as the Asset Purchase Agreement (APA). The APA contained a forum selection clause consenting to personal jurisdiction in courts located in Kansas City, Missouri. As discussed above, the SPSA contained a broad arbitration agreement providing for arbitration of disputes in Mexico. Defendants argued that the bulk of plaintiffs' claims arose out of the SPSA and that this court lacked personal jurisdiction over Lance Aaron and Wayne Aaron in relation to those claims. Defendants argued that neither of the individual defendants' actions or contacts with Missouri satisfied the minimum contacts test for personal jurisdiction in this state.

In my order granting in part defendants' motions to dismiss, I found that Lance Aaron's conduct on his own behalf and as the agent of Wayne Aaron amounted to substantial contacts with the State of Missouri. These contacts were numerous and were not tenuous, indirect, or incidental to the contract itself. The nature and quality of these contacts supported a finding of specific personal jurisdiction over the defendants. I found, however, that the conduct allegedly directed at Missouri and a Missouri corporation dealt solely with the SPSA and so was subject to the mandatory arbitration agreement. Because of the arbitration agreement, I found that the defendants could not have reasonably expected to be haled into court in Missouri for conduct relating to the negotiation

and execution of the SPSA. On that basis, I found personal jurisdiction over Lance Aaron and Wayne Aaron with respect to claims under the SPSA.

At the direction of the court, plaintiffs filed an amended complaint, winnowing out their claims arising under the APA, or otherwise independently of the SPSA. In that amended complaint, plaintiffs assert claims to compel arbitration of disputes arising under the SPSA and to enforce a foreign arbitral award already issued pursuant to the SPSA. Defendants again moved to dismiss, asserting *inter alia* lack of personal jurisdiction. In my order denying the motion to dismiss, I found that the contacts between Lance Aaron and the State of Missouri sufficiently satisfied due process to give rise to specific personal jurisdiction over Lance Aaron and his principal Wayne Aaron. Although the arbitration clause would preclude most claims arising under the SPSA, the court could exercise personal jurisdiction in claims to enforce the arbitration agreement. Any other conclusion would render the contract as a whole unenforceable, since an aggrieved party would have no recourse against one who breached the contract and then refused to arbitrate the dispute.

As noted in a previous order, the question of personal jurisdiction depends on whether exercise of personal jurisdiction over a non-resident defendant satisfies the requirements of the forum state's long-arm statute and the constitutional standards of due process. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). In Missouri, those standards are one and the same. *State v. Westbrooke*, 18 S.W.3d 143, 145-46 (Mo. App. 2000). The Due Process Clause requires that a defendant have certain minimum contacts with a forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The central question in this inquiry is whether a defendant has purposely availed himself of the privilege of conducting activities in the forum state to the extent that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 474 (1985).

The Eighth Circuit has developed a five-factor test to determine the sufficiency of a defendant's contacts with the forum state. *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). The five factors are as follows: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Id.* Of these five factors, the first three are the most important. *Id.*

Plaintiffs have alleged in their original complaint and in briefs to the court that, in the course of negotiating the SPSA, Lance Aaron engaged in a number of significant contacts with the State of Missouri. The only Missouri resident in this case is plaintiff Leggett & Platt, Inc., who did not join in the motion to compel arbitration and is not a party to the SPSA. Leggett & Platt, Inc. is the parent corporation to the two Mexican Leggett corporations that entered the SPSA as purchasers. Leggett & Platt, Inc. has repeatedly referred to Leggett and Platt de Mexico and L and P Mexico as "holding companies" who were designated shortly before the closing date on the SPSA to execute the contract. Leggett & Platt, Inc. provided the funds to complete the deal. More importantly to the issue of personal jurisdiction, however, Lance Aaron's actions in soliciting and negotiating the sale of MZM Mexico were directed at Leggett & Platt, Inc., a Missouri corporation.

Leggett & Platt, Inc. is not a party to the SPSA and does not have standing to enforce the agreement or any of its provisions. Lance Aaron's actions, on behalf of all MZM shareholders, to negotiate the deal are highly relevant to the issue of personal jurisdiction, however. Those actions were directed at Missouri, and include contacts by mail, e-mail, telephone, facsimile, and in person. Many of the claims of fraud and misrepresentation alleged by Leggett Mexico arise from Lance Aaron's contacts and communications directed at Missouri.

I find that, under the *Epps* test for minimum contacts, this court has specific personal jurisdiction over defendant Lance Aaron and his principal Wayne Aaron for the purpose of claims arising out of the SPSA. Lance Aaron's contacts with Missouri were not tenuous or indirect, and they were substantial in number. Plaintiffs' allegations regarding the underlying dispute arise in large part out of Mr. Aaron's communications directed at Missouri. Although no Missouri resident is a direct party to the dispute, the interests of a Missouri corporation will be implicated in the resolution of that dispute. The State of Missouri therefore has a significant interest in providing a forum to ensure that the dispute is resolved according to the terms of the agreement. The only issue remaining is the convenience of the parties. All of the parties with an interest in the motion to compel arbitration reside outside of Missouri. In fact, all of the parties except for Wayne Aaron reside in Mexico. Resolution of a motion to compel arbitration does not require the appearance of the parties in court, however, and all of the parties have been able to retain local counsel to represent their interests in this state. As discussed below, there is no indication that Missouri is any less convenient than any other potential forum for enforcement of the arbitration agreement.

All five *Epps* factors are either neutral as to the existence of personal jurisdiction, or weigh in favor of exercising personal jurisdiction over the defendants. Except for the existence of the arbitration agreement, defendants should have reasonably anticipated that they could be haled into court in the state where the SPSA was negotiated, and from whence came the funds used to complete the deal.

In my previous two orders, I found that the arbitration agreement implicated personal jurisdiction of certain claims arising under the SPSA. On further reflection and consideration of the decisional law, however, I must acknowledge that whether to exercise personal jurisdiction is a separate and independent inquiry from whether an arbitration agreement precludes the litigation of

claims and disputes. The Eighth Circuit has not weighed in on the issue of whether the enforcement of an arbitration agreement implicates personal or subject matter jurisdiction in federal courts. Many district courts have found that the existence of an arbitration agreement bars subject matter jurisdiction over contractual disputes. *See, e.g.*, *Tennessee Imports, Inc. v. Filippi*, 745 F. Supp. 1314, 1323 (M.D. Tenn. 2000); *McDonnell Douglas Corp. v. Kingdom of Denmark*, 607 F. Supp. 1016, 1020 (D.C. Mo. 1985); *Siderius, Inc. v. Compania de Acero del Pacifico*, 453 F. Supp. 22, 24-25 (S.D.N.Y. 1978). Other courts have found that an enforceable arbitration agreement precludes personal jurisdiction over the parties. *See Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Others, in examining the language of Chapter 1 of the Federal Arbitration Act, have concluded that the possibility of a stay in the proceedings while claims are arbitrated means that invocation of an arbitration agreement does not implicate a court's jurisdiction over the claims but simply prescribes the available remedies. *See DiMercurio v. Sphere Drake Inc., PLC*, 202 F.3d 71, 78 (1st Cir. 2000).

The First Circuit, in examining the question of jurisdiction over disputes subject to an arbitration agreement, criticized the

> penchant of judges and legislators to use the term 'jurisdiction' to describe the technically distinct notion of a court's authority to issue a specific type of remedy in a case in which the threshold requirements of subject-matter and personal jurisdiction are not open to question.

*DiMercurio*, 202 F. 2d at 78. I am persuaded by the First Circuit's call for more precision in judicial use of the term "jurisdiction." The distinction here is one of semantics—the outcome in this case on both the first and second motions to dismiss would have been identical, even if I had adopted the First Circuit's approach to this issue. The distinction is important, however, in that it will clear up any lingering confusion or appearance of inconsistency among my various jurisdictional findings. This court has personal jurisdiction over the defendants for all claims arising out of the SPSA. To

the extent plaintiffs' original complaint sought any relief other than enforcement of the arbitration agreement, however, it was properly dismissed.

### C. *Venue and* Forum Non Conveniens

Chapter 2 of the Federal Arbitration Act (FAA) contains a special venue provision for cases involving contracts falling under the Convention. *See* 9 U.S.C. § 204. Such an action

> may be brought in any [district] court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

9 U.S.C. § 204. The Supreme Court has held that the venue provisions of the Federal Arbitration Act are permissive, and that questions of venue may also be resolved by looking to the general venue statute. *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 195 (2000). Pursuant to the general venue statute, a civil action in which jurisdiction is not based solely on diversity of citizenship may be brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

As discussed above, this court has subject matter and personal jurisdiction in this case. All that remains is to determine whether venue properly lies in this district. The requirements for venue under the specific FAA statute and the general venue statute are met. This court has jurisdiction over the parties and the claims and, as discussed above, plaintiffs' claims have a substantial connection to this judicial district. Defendants argue that the plaintiffs, as Mexican corporations, have "absolutely no connection" to this district. They state, further, that the defendants did not conduct

substantial business related to the SPSA in the Western District of Missouri. The defendants do not dispute the plaintiffs' allegations, which have been consistent throughout the course of this litigation, relating to the number and nature of Lance Aaron's contacts with Missouri. The defendants negotiated the SPSA with a Missouri corporation, although that contract was ultimately executed with two Mexican subsidiaries. Plaintiffs' claims against the Aarons arise in large part from the information allegedly communicated by Lance Aaron to the Missouri corporation. The claims to enforce the arbitration agreement also have a significant relationship with plaintiff's claims under the APA, a contract specifically naming Missouri as the designated forum. Missouri is therefore a venue to be favored over, for example, Georgia or Texas, where two of the defendants reside.

Defendants argue that § 4 of the FAA precludes a district court from ordering arbitration at a location outside its jurisdiction. All of the cases cited by defendant in support of this proposition concerned domestic arbitration agreements not falling under the Convention. Defendant argues that, because the SPSA specifies that arbitration is to take place in Mexico, Mexico is the appropriate venue for enforcing the arbitration agreement. This position directly contradicts the language of the Convention and of the statutes implementing the Convention, both of which clearly contemplate enforcement of arbitration agreements outside of the jurisdiction where arbitration is to take place. *See* 9 U.S.C. § 206. The decisional law clearly supports the duty of a district court with personal jurisdiction over the parties to entertain a motion to compel arbitration, even though the agreement requires arbitration in a distant forum. *See Intergen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003) (collecting cases).

Defendants next argue that the principle of *forum non conveniens* supports a discretionary denial of venue in this case in light of the convenience to the parties and material witnesses, the

availability of Mexico as an alternative forum, and plaintiffs' alleged motives in selecting Missouri as the forum. Defendants suggest that plaintiffs chose to bring this action in Missouri because of a "perception that this Court would provide them with a more sympathetic ear than the more convenient Mexican forum." Therefore plaintiffs' choice of forum should receive little deference.

Defendants overlook the fact that plaintiffs have filed separate but related claims under the APA, a Missouri contract containing a Missouri forum selection clause. As plaintiffs suggest, the choice of forum in this case appears to be based on convenience and efficiency, not a desire to inconvenience the defendants—who would have to appear as parties or material witnesses in Missouri to litigate the APA claims anyway—or to gain some imagined strategic advantage. As defendants have repeatedly pointed out, the plaintiffs bringing this motion are not citizens of Missouri. They have no "hometown" advantage in this forum. Moreover, defendant's arguments concerning the convenience of the parties are answered by the simple fact that all substantive issues arising under the SPSA will be decided by the arbiter in Mexico City. The parties have not been required to appear in person in this court, nor are any material witnesses necessary as to the underlying claims. Plaintiffs' motion to compel arbitration is a paper motion to be decided on the parties' briefs and pleadings. In these days of electronic filing, and given this court's liberal allowance of appearance *pro hac vice* by out-of-state attorneys, Missouri is no less convenient a forum than any other for these purposes. Defendants' arguments of *forum non conveniens* are therefore rejected.

### D. Prerequisites to Arbitration

Defendants next argue that plaintiffs' motion to compel arbitration is not yet ripe as plaintiffs have failed to follow the procedural requirements for compelling arbitration. In support of this contention, defendants point to the language of the arbitration agreement itself, as well as the

Federal Arbitration Act.

Section 12.16 of the SPSA provides that "[t]he arbitration and all proceedings relating thereto shall be held pursuant to the international arbitration rules of the American Arbitration Association (AAA)." The International Dispute Resolution Procedures of that organization require that a party initiating arbitration must give written notice of arbitration to the administrator and to the party against whom the claim is being made. Plaintiffs have not provided written notice of arbitration to the administrator or to the defendants, nor have they attempted to commence arbitration under the SPSA. Defendants therefore argue that this motion to compel arbitration is premature.

Section 4 of the FAA states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate... may petition any United States district court... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Defendants argue that plaintiffs cannot demonstrate that defendants have refused to arbitrate, and therefore are not an aggrieved party under the FAA.

I note initially that defendants' arguments do not preclude this court from compelling arbitration pursuant to the parties' agreement. Nothing in the Convention or in the FAA requires a rebuffed attempt to initiate arbitration before a motion to compel arbitration may be filed. The FAA specifically recognizes that a party may be aggrieved by another party's failure or neglect to arbitrate, as well as an outright refusal to do so. Similarly, the procedures prescribed by the AAA apply only to instances where a party attempts to initiate arbitration, not where they are responding to another's failure to do so. Plaintiffs' underlying allegations are based in part on defendants' invocation of the Mexican criminal process to resolve disputes under the SPSA—an alleged failure to arbitrate. While those allegations have not been proven, they are sufficient to satisfy the standing

requirements of § 4 of the FAA.

Courts have routinely held that it is the province of the arbitrator to decide certain issues, such as waiver of arbitration, refusal to arbitrate, and fraud in the inducement. See *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002) (holding that substantive questions of arbitrability are for judicial determination, while arbitrators should decide allegations of waiver, delay, or other procedural defenses to arbitrability); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding that fraud in the inducement is a question for the arbitrator, unless it concerns the inducement of the arbitration clause itself); *Pro Tech Indus. v. URS Corp.*, 377 F.3d 868, 871-72 (8th Cir. 2004) (waiver and insufficient and untimely demand). Defendants' arguments regarding plaintiffs' failure to follow proper procedure, even if sustainable, are questions for the arbitrator to decide and do not relieve this court of its statutory duty to enforce the arbitration agreement.

### *E. Fraud in the Inducement*

Finally, defendants argue that the arbitration agreement relied upon by plaintiffs is null and void and therefore unenforceable under the Convention. Defendants allege that "[e]vidence exists that Mexican authorities are investigating fraud committed by Plaintiffs that directly bears on the formation of the SPSA." This investigation, defendants state, "was apparently halted by alleged bribery of the Mexican Magistrate by one of Plaintiffs' counsel."

These allegations of fraud, while serious, concern the formation of the SPSA as a whole, not the arbitration clause in particular. The Supreme Court has held that allegations of fraud in the inducement of the contract as a whole constitute a defense to arbitration that the arbitrator should decide. *Prima Paint*, 388 U.S. at 403. The mandatory language of the FAA requires courts to order arbitration to proceed "once it is satisfied that the making of the arbitration agreement" is not an

issue. *Id.* Only if there is an allegation of fraud in the inducement of the arbitration clause itself does there arise an issue for the federal court to adjudicate. *Id.* at 403-04.

There has been no allegation of fraud in this case specifically concerning the arbitration clause itself. Any allegation of fraud encompasses the contract as a whole, and therefore only incidently touches the arbitration agreement. The arbitration agreement is therefore not "null and void" or otherwise unenforceable under the Convention and the FAA.

## II. CONCLUSION

For the reasons discussed above, I make the following findings:

(1) There is a written agreement to arbitrate all disputes arising under the SPSA;

(2) The agreement provides for arbitration in Mexico, a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(3) The agreement arises out of a commercial relationship;

(4) Parties to the agreement are non-American citizens, and the agreement bears a reasonable relationship to Mexico;

(5) The agreement is not null and void, inoperable, or incapable of being performed;

(6) This court has subject matter and personal jurisdiction over the disputes in this case, and venue properly lies in this court; and

(7) All parties necessary to the resolution of plaintiffs' motion to compel arbitration are present in this case.

It is therefore

ORDERED that plaintiffs' motion to compel arbitration is granted as against defendants Wayne Aaron and Lance Aaron. The parties are directed to proceed forthwith to arbitration in Mexico City, Mexico, pursuant to the arbitration agreement memorialized in the Share Purchase and

Sale Agreement. It is further

ORDERED that the party initiating arbitration shall notify all interested parties of the arbitration proceedings, including all signatories to the SPSA, regardless of whether those persons are parties in the instant action before this court. It is further

ORDERED that failure to comply with this order compelling arbitration shall subject the noncompliant party to contempt proceedings in this court, or summary dismissal of the instant case, as appropriate. It is further

ORDERED that, pursuant to 9 U.S.C. § 16(b), this order is not subject to interlocutory appeal.

/s/Robert E. Larsen

ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 25, 2005